UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| LINDA GARCIA, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-501 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| _____) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On December 18, 2009, plaintiff filed her applications for benefits. She alleged a May 27, 2009, onset of disability.[1] (Page ID 146-53). Her claims were denied on initial review. (Page ID 104-07). On July 27, 2011, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (Page ID 63-100). On September 19, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (Op., Page ID 50-58). On April 16, 2013, the Appeals Council denied review (Page ID 25-27), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, January 2010 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ failed to evaluate the opinions of plaintiff's treating physician as required by social security regulations and rulings; and

2. The ALJ used "reasoning contrary to relevant case law" in making his factual finding regarding plaintiff's credibility.

(Statement of Issues, Plf. Brief at 1, docket # 13, Page ID 431). I recommend that the Commissioner's decision be affirmed.

### **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on May 27, 2009, through the date of the ALJ's decision. (Op. at 3, Page ID 52). Plaintiff had not engaged in substantial gainful activity on or after May 27, 2009. (*Id.*). Plaintiff had the following severe impairments: history of low back strain, back pain, bursitis of the right hip, hip pain and depression. (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, Page ID 53). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and

-3-

>   416.967(b) except the claimant requires a sit/stand option.  She can occasionally balance, stoop, kneel crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes, or scaffolds.  Furthermore, due to symptoms of depression, the claimant is limited to unskilled work.

(*Id.* at 5, Page ID 54).  The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (*Id.* at 6-7, Page ID 55-56). Plaintiff was not able to perform any past relevant work.  (*Id.* at 8, Page ID 57). Plaintiff was 47-years-old as of her alleged onset of disability and 50-years-old as of the date of the ALJ's decision.  She was classified as a younger individual through August 14, 2011.  On and after August 15, 2011, plaintiff was classified as an individual closely approaching advanced age.  (*Id.*).  Plaintiff has at least a high school education and is able to communicate in English.  The ALJ found that the transferability of job skills was not material to a disability determination.  (*Id.*).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 12,900 jobs in the Michigan's Lower Peninsula that the hypothetical person would be capable of performing.  (*Id.* at 9, Page ID 57-58; *see* Page ID 92-94).  The ALJ found that this constituted a significant number of jobs.  Using Rules 202.14 and 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.  (Op. at 8-9, Page ID 57-58).

### 1.

Plaintiff argues that the ALJ committed reversible error by failing to give adequate weight to the opinion of Daniel Mankoff, M.D.  (Plf. Brief at 11-14, Page ID 441-444; Reply Brief at 1-4, Page ID 472-75).  The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a

patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable

---

[2]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff claimed a May 27, 2009, onset of disability.  She reported that her back pain began in March 2009, and that it was "not related to any specific trauma."[3]  (Page ID 291).  On March 11, 2009, plaintiff told medical care providers at East Paris Internal Medicine that she had "twisted while walking."  Plaintiff was five  5' 9 ½" and weighed 267 pounds.  Her straight leg raising tests were negative.  She was diagnosed as having a low back strain and was instructed to return to work on March 16, 2009.  (Page ID 351).  Plaintiff returned to East Paris Internal Medicine on March 17, 2009.  She reported ongoing back pain.  The diagnosis of a low back strain remained unchanged.  Plaintiff received a prescription for Flexeril and was directed to return to work on March 23, 2009.  (Page ID 350).

On March 26, 2009, plaintiff was examined by Patrick Ronan, M.D., at Orthopaedic Associates of Michigan (OAM).  (Page ID 344-45).  Plaintiff reported that she had experienced a "slip without fall while descending steps to visit her daughter on 03-11-09."  (Page ID 344).  Plaintiff reported that she did not use tobacco.  She weighed 260 pounds.  Her trunk motion was preserved, with discomfort noted at the end range of flexion and extension.  Lateral bending was well tolerated.  On examination, Dr. Ronan found that plaintiff's muscle tome was normal.  Her straight leg raising tests were negative.  Her sensation, reflexes, and strength were preserved in her lower extremities.  She was oriented in all three spheres.  Dr. Ronan noted that plaintiff's x-rays showed "no evidence of spondylosis or spondylolisthesis.  Disc spaces appeared to be maintained with a degree of sclerosis at the L5-S1 endplates.  Plaintiff was encouraged to remain active.  Dr.

---

[3]Plaintiff testified that her back pain began in March 2009, and that she received short and long term disability benefits through her employer.  The employer terminated her employment on May 27, 2010.  (Page ID 76-77).

Ronan emphasized that "[w]alking is good exercise." Dr. Ronan gave plaintiff a slip to temporarily remain off work from her job at Steelcase. (Page ID 344-45).

On May 20, 2009, plaintiff was received physical therapy at OAM on a referral from Dr. Ronan. (Page ID 338-39). Plaintiff reported that she was "walking in the dark and stopped funny. The next day she woke up with pain." (Page ID 338). OAM records note that plaintiff was "0 for 4 showing up in PT [after] her initial evaluation." (Page ID 336).

On June 3, 2009, plaintiff appeared at East Paris Internal Medicine for her annual physical. She weighed 266 pounds and was instructed to lose weight. (Page ID 349-50).

On June 9, 2009, plaintiff appeared at Michigan Pain Consultants, P.C. (MPC) for an evaluation of her back and leg pain. (Page ID 291-92). Dr. Mankoff noted that plaintiff was a healthy appearing female in no acute distress. Plaintiff indicated that she was on medical leave from her job at Steelcase. She was awake, alert and oriented. Plaintiff was 5'9" and weighed 260 pounds. She walked with a "mildly antalgic gait favoring her right leg. She was able to stand on her heels and toes without assistance." Her straight leg raising test was negative. She had decreased lumbar flexion without discomfort. Plaintiff had decreased extension with some right sided low back pain. She had tenderness around L5 and S1 on the right. Lateral bending was painful on the right. Plaintiff had a "good range of motion at both hips. There [was] significant tenderness over the right trochanter. There [was] no tenderness over the SI joint." (Page ID 291). Dr. Mankoff offered a diagnosis of lumbar degenerative disc disease, lumbar radiculopathy, possible lumbar stenosis, and trochanteric bursitis. Mankoff gave plaintiff an epidural injection. (Page ID 292).

On June 18, 2009, Dr. Mankoff noted that plaintiff reported no pain relief from the injection. He recommended a MRI to evaluate plaintiff's condition. (Page ID 298). On June 26, 2009,

plaintiff's MRI showed only "[m]ild disc and facet degeneration" and was "otherwise normal." (Page ID 304). On July 7, 2009, Dr. Mankoff noted that plaintiff's MRI "showed only degenerative changes at L4-5 without significant neural compression or disc protrusion." (Page ID 290). Dr. Mankoff administered injections on July 23, 2009 (Page ID 296) and August 20, 2009 (Page ID 297). On August 20, 2009, he reviewed the symptoms that plaintiff reported and noted that although plaintiff complained of back pain, the most significant problem seemed to be more in the area of her hip with radiating pain down the lateral aspect of the leg. (Page ID 297). On October 15, 2009, Dr. Mankoff noted that plaintiff continued to complain of significant pain. She reported that the epidural and L5 transforaminal injections had not been beneficial. Dr. Mankoff stated that he did not have a clear cut diagnosis. He recommended "proceeding with a physical medicine evaluation and an EMG." He indicated that he was referring plaintiff to Dr. Lado. (Page ID 299).

On October 30, 2009, plaintiff returned to MPC. (Page ID 288-89). Derek Lado, M.D., noted that plaintiff's MRI showed "only degenerative changes." (Page ID 288). Her straight leg raising tests were negative. (Page ID 288). Dr. Lado performed a nerve conduction study. (Page ID 289). He found "no electrodiagnostic evidence of a right lower extremity radiculopathy." (Page ID 289, 303). Dr. Lado administered injections on November 20, 2009 (Page ID 294) and December 10, 2009 (Page ID 295). On January 8, 2010, Dr. Lado noted that plaintiff was "mildly tender at the right SI joint." Her straight leg raising test was negative. Dr. Lado referred plaintiff back to Dr. Mankoff. (Page ID 293).

On February 4, 2010, Dr. Mankoff offered a diagnosis of lumbar degenerative disc disease and lumbar radiculopathy. He administered an epidural injection. (Page ID 342). On March 4, 2010, Dr. Mankoff noted that plaintiff "continue[d] to be a diagnostic problem." (Page ID 340).

She "had an MRI and EMG, neither of which really showed a lot of pathology." Diagnostically, plaintiff did have "some evidence of disc changes." Mankoff recommended a discogram in an effort to "actually identify a specific painful disc." (*Id.*).

On May 20, 2010, plaintiff underwent a discogram[4] at Spectrum Health. A. Glenn, M.D., stated his discogram findings as follows: "At the L3-4 and L4-5 levels the contrast is confined to the region of the nucleous pulposis without disruption of outer anular fibers." "At the L5-S1 level contrast extends along the outer anular fibers posteriorly. There is no evidence of extravasation of contrast outside the anular fibers within the spinal canal." (Page ID 343).

On July 15, 2010, plaintiff returned to OAM and saw Joseph T. Brown, D.O. (Page ID 333-35). Plaintiff weighed 260 pounds. She had a "mild antalgic gait." She was able to stand on her heels and toes without difficulty. Plaintiff's x-rays showed some very mild degenerative changes and spondylosis, most dominant at the L5-S1 level, mild disc space narrowing. A possible slight disc protrusion to the right with an annular tear was noted. Brown found a very subtle spondylolisthesis at L4-5 and a likely facet cyst at that level. Dr. Brown reviewed the "post discogram CT scan from Spectrum Health" and found that it showed "a degree of contrast extravasation from the L5-S1 level." Plaintiff's extremities displayed no cyanosis, clubbing, or

---

[4]"A discogram, or diskogram, is a test used to evaluate back pain. A discogram may help your doctor determine if an abnormal disk in your spine is causing your back pain. Spinal disks look a little like jelly doughnuts, with a tough outer layer and a gel-like substance inside. Disks act as cushions between the bones in your spine. During a discogram, dye is injected into the soft center of the disk. The injection itself sometimes reproduces your back pain. Several disks may be injected to try to pinpoint the cause of your back pain. The dye also moves into any cracks in the disk's exterior, which can then be seen on an X-ray or CT scan. However, disks that show signs of wear and tear don't always cause symptoms, so the usefulness of a discogram is controversial." (http://www.mayoclinic.org/tests-procedures/discogram/basics/definition/prc-20013848) (last visited Feb. 6, 2015).

edema. Her motor strength was 5/5 and her straight leg raising test was negative. Dr. Brown emphasized the importance of weight loss. (Page ID 334-35).

The MRI on July 20, 2010, showed normal lumbar lordosis and no substantial scoliosis. It showed normal paraspinous soft tissue structures. Mild bilateral facet arthrosis was indicated at L3-4 and L4-5. A "L5-S1 shallow central disc herniation of the protrusion type" was indicated." (Page ID 301). On July 29, 2010, Dr. Brown reviewed the MRI results with plaintiff. The MRI showed "degenerative disc disease at L5-S1 with lumbar spondylosis and facet disease at L5-S1." (Page ID 330). Dr. Brown recommended that plaintiff lose between "50-to-60 pounds." (*Id.*). If plaintiff lost the weight, Dr. Brown would consider performing surgery, most likely a L5-S1 fusion, with possible extension to L4-5. (*Id.*).

On January 5, 2011, plaintiff returned to MPC. (Page ID 357-58). Plaintiff reported to Physician's Assistant Charles Bray that she had recently been seen by Dr. Brown and been told that she "need[ed] to lose 30-40 pounds before he can perform any surgery on her." (Page ID 357). Plaintiff continued to smoke up to 2 packs of cigarettes per day. Plaintiff complained of bilateral shoulder pain which was a "new complaint for her." (*Id.*). Plaintiff's grip strength was equal. Her reflexes were +2 and she had no edema or muscle atrophy. Mr. Bray noted spasms in the paraspinous musculature. He treated plaintiff with trigger point injections and bilateral suprascapular nerve blocks. (Page ID 357-58). Plaintiff returned on March 2, 2011. Her weight remained at 260 pounds. She was advised to quit smoking and lose weight. (Page ID 355-56). On April 28, 2011, plaintiff returned to MPC and saw Physician's Assistant Bray. (Page ID 353-54). Bray reiterated that plaintiff had been "seen by a surgeon, Dr. Brown, and was told that she is a surgical candidate but she would need to lose a significant amount of weight, as well as smoking

cessation." (Page ID 353). Bray gave plaintiff trigger point injections and counseled her on smoking cessation. (Page ID 354).

In April 2011, plaintiff appeared at Metro Health Hospital as a new patient. (Page ID 381). She complained of a headache and aching shoulders. She indicated that she continued to smoke cigarettes. (Page ID 381-82). Plaintiff weighed 278 pounds and was in no apparent distress. Her extremities displayed no clubbing, cyanosis or edema. Her gait was normal. Her deep tendon reflexes were normal and symmetric. She was alert and oriented in all spheres. (Page ID 383). In June 2011, plaintiff returned to Metro Health. (Page ID 359-75). She stated that she quit smoking on May 1, 2011. (Page ID 375). She weighed 280 pounds. Her extremities displayed no clubbing, cyanosis, or edema. Her gait was normal and her deep tendon reflexes were normal. Her muscle strength was 5/5. She was oriented in all three spheres. Her behavior was normal and her speech was appropriate. (Page ID 366). She had Hepatitis C and complained of depression and anxiety. She received a number of prescription medications. (Page ID 364-66).

On July 11, 2011, plaintiff's attorney elicited a statement from Dr. Mankoff. (Page ID 396-99). Dr. Mankoff stated that his diagnosis for plaintiff was "lumbar degenerative disc disease and radiculopathy." (Page ID 396). In addition, he offered his opinion that plaintiff would miss work on a regular basis, would be unable to stoop and would require frequent unscheduled breaks. (Page ID 396-99).

The ALJ found that the work-preclusive RFC restrictions that Dr. Mankoff suggested in the statement were entitled to little weight:

> As for the opinion evidence, Dr. Mankoff issued an opinion regarding the claimant's limitations. Dr. Mankoff opined that the claimant would be unable to perform full-time work on a regular basis. (17F/1). He further opined that the claimant would be unable to stoop and would require frequent unscheduled breaks throughout the day (17F). The undersigned

> gives little weight to this opinion as it is inconsistent with the medical evidence of record and Dr. Mankoff's own treating notes. Although Dr. Mankoff opines that the claimant's limitations are due to her degenerative disc disease, his records state that "the most significant problem seems to be more in the area of her hip" (1F/14). Furthermore, Dr. Mankoff asserted that his opinion is consistent with the objective medical evidence; however, this is inconsistent with his statement that the objective tests do not show much pathology (7F/1). The MRI images and EMG evidence is not supportive of radiculopathy, yet the doctor opined that the claimant suffers from disabling radicular pains. Dr. Mankoff's opinions are not well supported by testing that is continued in his records, and of which he must have been aware. The support for his opinion must be, therefore, the claimant's complaints rather than the objective medical evidence.

(Op. at 7, Page ID 56). Mankoff's predictions of how often plaintiff would likely miss work was conjecture, not a medical opinion. *See Murray v. Commissioner*, 1:10-cv-297, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Further, the issues of disability and RFC are reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Allen v. Commissioner*, 561 F.3d at 652. If a treating physician "submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors – his decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)). Here, the ALJ gave a more than adequate explanation of his consideration of Mankoff's statement and gave good reasons why he found that the opinions expressed therein were entitled to little weight.

Plaintiff makes a passing argument that the ALJ "failed to utilize the factors listed in 20 C.F.R. § 404.1527(c)." (Plf. Brief at 13, Page ID 443). The argument is repeated in her reply brief. (Reply Brief at 3-4, Page ID 474-75). The ALJ "considered the opinion evidence in accordance with

the requirements of 20 CFR 404.1527 and 416.927[.]" (Op. at 6, Page ID 55). Under sections 404.1527(c) and 416.927(c), the ALJ is only required to "consider" the factors. The regulation does not require a "factor-by-factor" analysis. *See Francis v. Commissioner*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *see also Kostovski-Talevska v. Commissioner*, No. 5:13-cv-655, 2014 WL 2213077, at *9 (N.D. Ohio May 28, 2014) (collecting cases); *Mayfield v. Commissioner*, No. 1:12-cv-912, 2014 WL 1341923, at * 11 (W.D. Mich. Mar. 31, 2014); *Owens v. Commissioner*, No. 1:12-cv-47, 2013 WL 1304470, at *2 (W.D. Mich. Mar. 28, 2013). The ALJ recognized that Dr. Mankoff had seen plaintiff often enough to be considered one of plaintiff's treating physicians. (Op. at 6, Page ID 55). The ALJ found that the proffered restrictions listed in the statement to plaintiff's attorney were not well supported by objective evidence and were inconsistent with Mankoff's own treatment notes. For example, the ALJ noted that Mankoff had described plaintiff as a "diagnostic problem" in his treatment notes because plaintiff had undergone objective tests, "MRI and EMG, neither of which really showed a loth of pathology." (Op. at 6, Page ID 55) (*see* Exhibit 7F/1, Page ID 327). "The MRI images and EMG evidence is not supportive of a severe radiculopathy, yet the doctor opined that the claimant suffers from disabling radicular pains." (Op. at 7, 56). Mankoff's opinions were based on his assigning full credibility to his patient's subjective complaints rather than objective test results. (*Id.*). The ALJ is responsible for making the factual finding regarding the claimant's credibility, not the treating physician. *See Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *see also Ferguson v. Commissioner*, 628 F.3d 269, 274 (6th Cir. 2010); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) ("[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ."). I find no violation of the treating physician rule.

**2.**

Plaintiff argues that the ALJ "utiliz[ed] reasoning contrary to relevant case law and Social Security regulations and rulings" in making his factual finding regarding her credibility. (Plf. Brief at 14-16, Page ID 444-46; Reply Brief at 4, Page ID 475). This case turns on the ALJ's factual finding regarding the credibility of plaintiff's subjective complaints. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments was not fully credible:

> At the hearing, the claimant testified that she is unable to work due to pain in her back which radiated into her hips and down her right leg. She also stated that she ambulates with a cane because her right leg gives out on occasion. The claimant also testified that she experiences fatigue, crying spells, and lapses in concentration. Furthermore, she stated that she is unable to walk a half of a block, climb stairs, or stand more than two hours in an eight-hour day.
>
> The claimant has been diagnosed with lumbar degenerative disc disease and trochanteric bursitis (1F/9). The record reveals the claimant has decreased lumbar flexion and tenderness throughout her lumbar spine and trochanteric regions (8F/5, 1F5). However, the record reveals that the claimant has a good range of motion and strength in her hips, as well as negative straight leg raise tests (1F/5, 8, 10). Furthermore, although the record noted on multiple occasions that the claimant walks with a mildly antalgic gait, recent medical records reveal that the claimant had a normal gait (15F/8 , 25, 1F/8). The record also shows that the claimant was able to heel and toe walk, walk regularly for fitness, and easily change positions from sitting to standing (8F/5, 1F/8, 17).
>
> The objective medical evidence does not support the claimant's allegations. Imaging studies of the claimant's spine revealed mild degenerative disc disease (1F/7, 21). A CT scan of the claimant's lumbar spine was unremarkable (10F/1). Although the claimant reported pain radiating in her hips and legs, nerve conduction studies revealed no electrodiagnostic evidence of radiculopathy (1F/6). Furthermore, Daniel Mankoff, the claimant's treating physician, noted that the claimant's complaints of severe pain present a "diagnostic puzzle," as the objective tests do not show much pathology (7F/1).
>
> In addition to her physical impairments, the claimant has also been diagnosed with depression (18F/10). The claimant reported that she was hospitalized in 2007 due to suicidal ideation (18F/20). However, she now reports that her depression is much more stable and she is no longer suicidal (*id*). During physical examinations, the claimant exhibited normal

> behavior, appropriate speech, normal thought content, and a euthymic affect (15F/8). Furthermore, the claimant reported that she was able to concentrate well enough to read, and in November 2009, she denied suffering from depression.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In assessing the claimant's credibility, the undersigned notes that the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant reported that she is able to prepare meals, drive a car, shop for groceries, walk on a regular basis for fitness, care for her personal needs, dust, and wash dishes (5E, 1F/17). Furthermore, the claimant was advised to lose a significant amount of weight, however, the record reveals that the claimant's weight remained constant throughout her alleged period of disability (8F, 14F/3).
>
> * * *
>
> In sum, the above residual functional capacity assessment is supported by the medical evidence of record. Although the evidence establishes underlying medical conditions capable of producing some pain or other limitations, the substantial evidence of record does not confirm disabling pain or other limitations arising from those impairments, nor does it support a conclusion that the objectively determined medical conditions were of such severity that they could reasonably be expected to give rise to disabling pain or other limitations. The undersigned finds that the preponderance of the credible evidence establishes that the claimant experienced no greater than mild to moderate functional limitations upon her ability to perform basic work activities as described in 20 CFR 404.1521(b) and 20 CFR 416.921(b).

(Op. at 6-7, Page ID 55-56).

Plaintiff argues that the ALJ's reasoning was contrary to the Sixth Circuit's decision in *Walston v. Gardner*, 381 F.2d 580 (6th Cir. 1967) and that the ALJ violated SSR 82-59p. (Plf. Brief at 15, Page ID 445). Neither argument has merit. In *Walston*, it was "unquestioned" that William Walston, "a man almost sixty years of age," had suffered significant injuries in a truck accident on December 4, 1957. His testimony claiming that he suffered "intense pain with every movement" had "been confirmed by every doctor who had examined him." *Id.* at 586. The Court of Appeals

found that under these circumstances, the few activities that Mr. Walston could perform while enduring great pain in the process, fell short of evidence that he was capable of engaging in substantial gainful activity. *Id.* Here, by contrast, the objective medical evidence such as EMG studies and MRIs generally undermined rather than supported plaintiff's claim. There was no agreement among physicians that plaintiff suffered intense pain with movement. *See Bailey v. Commissioner*, 623 F. Supp.2d 889, 901-02 (W.D. Mich. 2009); *also Triplett v. Astrue*, No. 3:12-cv-42, 2012 WL 6706163, at * 6 (E.D. Ky. Dec. 26, 2012); *Long v. Astrue*, No. 3:10-273, 2011 WL 1258407, at * 19 (M.D. Tenn. Mar. 7, 2011). It was appropriate for the ALJ to take plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff's credibility was further undermined by the absence of significant atrophy or neurological deficits. *See Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856-57 (6th Cir. 1990) (the absence of atrophy and significant neurological deficits supports the Commissioner's conclusion that the claimant's allegation of severe and disabling pain was not credible); *see also Gaskin v. Commissioner*, 280 F. App'x 472, 477 (6th Cir. 2008).

Plaintiff's argument based on "SSR 82-59p" (Plf. Brief at 15, Page ID 445) fares no better. There is no such ruling. Plaintiff likely intended to cite SSR 82-59, but that ruling does not apply. SSR 82-59 only applies in cases where the ALJ makes a finding that the claimant is disabled. "A precondition to the applicability of SSR 82-59 is that the ALJ determine that the plaintiff was disabled. The ALJ did not determine that the claimant was disabled. Therefore, SSR 82-59 is inapposite to the facts of this case." *Williams v. Commissioner*, No. 3:13 CV 1276, 2014 WL 1406433, at * 13 (N.D. Ohio Apr. 10, 2014) (collecting cases); *Hatcher v. Commissioner*, No. 12-cv-

13831, 2013 WL 5291622, at * 6 (E.D. Mich. Sept. 19, 2013); *see Titles II & XVI, Failure to Follow Prescribed Treatment*, SSR 82-59 (SSA 1982) (reprinted at 1982 WL 31384).  Nothing in SSR 82-59 restricted the ALJ's ability to consider the impact plaintiff's noncompliance had on her credibility.  *See Szabo v. Commissioner*, No. 3:13 CV 2485, 2014 WL 3787551, at * 11 (N.D. Ohio July 31, 2014) (SSR 82-59 "only applies to claimants who would otherwise be disabled within the meaning of the Act; it does not restrict the use of evidence of noncompliance for the disability hearing."); *accord Hopper v. Commissioner*, No. 4:11-cv-610, 2013 WL 391167, at * 4 (E.D. Tex. Jan. 20, 2013); *Hodges v. Astrue*, No. 4:10-cv- 804, 2011 WL 3320659, at * 4 (W.D. Mo. Aug. 2, 2011) ('[T]he ALJ properly used Plaintiff's noncompliance as a factor in his analysis of Plaintiff's credibility.").  It was appropriate for the ALJ to draw an adverse inference from plaintiff's failure to follow medical advice.  The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible.  *See Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988); *see also Blaim v. Commissioner*, No. 14-1110, __ F. App'x __, 2014 WL 6997509, at * 3 (6th Cir. Dec. 11, 2014).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Heston v. Commissioner*, 245 F.3d at 534.  The ALJ's factual finding regarding plaintiff's credibility is supported by more than substantial evidence.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  February 11, 2015         /s/  Phillip J. Green
                                  United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).